## Penn-Mar Knitting Company v. I. Fisher Son & Co.

*Contracts—Rescission—Sales—Sale by sample—Inspection—Refusal to accept goods—Measure of damages—Sales Act of 1915.*

1. A request to cancel a contract or notice of an intended breach is not in itself a rescission or breach unless accepted and acted upon by the other party.

2. In an executory contract for the sale of goods not specific, the vendor must deliver or tender delivery, unless this is excused by a refusal of the vendee to accept.

3. Where goods are sold by sample, the vendee has a right to inspect.

4. The measure of damages for a refusal to accept salable goods, where the title has not passed, is the difference between the contract price and the market value of the goods at the time and place of delivery.

5. An offer or threat of cancellation of a contract for the purchase and sale of goods which has not been accepted or acted upon does not affect the validity of the contract obligation, and the vendor cannot sue his vendee and recover the purchase price of goods which he retains in his possession with no evidence to warrant the conclusion or even the inference that title to the goods had passed to the vendee.

Rule for new trial and motion for judgment *non obstante veredicto.* C. P. No. 5, Phila. Co., June T.; 1920, No. 5228.

*R. R. Vale* and *A. E. Hirshman,* for plaintiff.

*S. J. Gottesfeld,* for defendants.

MARTIN, P. J., April 14, 1925.—The plaintiff brought this suit for the recovery of the purchase price for 300 dozen hose, a part of a contract, partly in parol and partly in writing, for 1000 dozen hose, of which 700 dozen were delivered by the plaintiff to, and paid for by, the defendants. The contract was entered into on or about Jan. 29, 1920; deliveries were made during the following February and March as and when requested by the defendants. These deliveries were made by the plaintiff at the place of business of the defendants in the City of Philadelphia. The goods were sold by sample and were to be of first quality, but no time was specified for delivery. On April 6, 1920, the defendants, by letter, requested the plaintiff to withhold further shipments until May, and on May 28th the defendants, by letter to the plaintiff, complained of the character of the goods which had been delivered and requested the plaintiff "to consider the balance on order canceled," to which the plaintiff replied by letter on May 29th, refusing to accept cancellation, asking the defendants to accept the goods within a few days' time, with a threat that otherwise the plaintiff would "take such action as law will allow." On June 5th plaintiff enclosed a bill to defendants for the remaining 300 dozen and asking them to receive the goods at once. On June 15th defendants, by a letter, asked plaintiff to ship the remaining merchandise at once, stating that they would make inspection and if the goods were like the sample they would be accepted. This was followed by a letter on July 1st from the attorney for defendants, addressed to the plaintiff, and demanding immediate delivery of the remaining 300 dozen, with a notice that if not delivered by the 8th of July, defendants would consider the contract terminated and rescinded by the plaintiff. On July 9th the attorney for the plaintiff addressed a letter to the attorney for the defendants, offering to allow inspection at a specified storage place.

The goods in question were never delivered, nor was there any tender of delivery.

The jury returned a verdict in favor of the plaintiff for $3690, the contract price and interest. Defendants have taken a rule for a new trial and have moved for judgment *non obstante veredicto,* contending in support of this

rule and motion that the verdict was against the law, the evidence and the charge of the court; in effect, that binding instructions should have been given in favor of the defendants.

The defendants contend that the plaintiff cannot recover, for the following reasons:

1. The offer of cancellation by the defendants not having been accepted, the contract remained in full force and the plaintiff's duty was to perform or tender performance.

It is well established that a request to cancel, or a notice of an intended breach of contract, is not in itself a rescission, nor a breach, unless accepted and acted upon by the other party; that such other party may ignore such notice of intention not to perform and hold the delinquent responsible for all the consequences of non-performance, but, in that event, the contract is kept alive for the benefit of both parties, and it is the duty of the party ignoring such notice to fully perform upon his part. In an executory contract for the sale of goods not specific, the vendor must deliver, or tender delivery, unless this is excused by a refusal to accept by the vendee. In the case before us the defendant vendee, before the time of performance had expired, withdrew the attempted cancellation and demanded delivery of the goods. It is true this was coupled with a demand for inspection, but where goods are sold by sample, the vendee has a right to inspect, and, under the undisputed evidence in this case, the goods were not only sold by sample, but were to be delivered by the plaintiff to the place of business of the defendants. The plaintiff not only failed to deliver, but declined to make delivery, and under all the authorities he has failed in the performance of his contract and cannot recover: Zuck v. McClure & Co., 98 Pa. 541; Maguire v. Johnston, 207 Pa. 592; Sanders v. Brock, 230 Pa. 609; Fairfax Textile Mills v. Feingold, 273 Pa. 73; Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90; Dodd v. Stewart, 276 Pa. 225; Woldert Grocery Co. v. Wilkinson, 39 Pa. Superior Ct. 100; Sherts v. Kimmig, 44 Pa. Superior Ct. 90; American Steel Foundries v. Metal Products Co., 74 Pa. Superior Ct. 505; Shamliam v. Waxman, 80 Pa. Superior Ct. 73; Leonard Seed Co. v. Lustig-Burgerhoff Co., 81 Pa. Superior Ct. 499.

2. The second reason advanced in support of the rule and motion is that the plaintiff here sues for the contract price of the goods which he still retains in his possession, with no evidence to warrant the conclusion, or even the inference, that title to the goods has passed to the vendee. That his remedy, if any, was for damages, the measure of which was the difference between the contract price and the market price at the time and place of delivery, or breach by the defendants, and having failed to present any evidence showing this measure of damages, he could not recover.

The general rule is that the measure of damages for a refusal to accept salable goods, where the title has not passed, is the difference between the contract price and the market value of the goods at the time and place of delivery: Unexcelled Fireworks Co. v. Polites, 130 Pa. 536. And the rule and its exceptions and the numerous cases thereon have been considered and cited in the very recent case of the Frank Pure Food Co. v. Dodson et al., 281 Pa. 125, where the provisions of the Sales Act of 1915 are also considered, and it is held that a mere setting apart of the goods by the seller is not a compliance with section 19 of said act, which requires the assent of buyer and seller before title can be said to pass in goods ascertained and set aside; that under the provisions of section 64 of the Sales Act the measure of damages, where there is an available market for the goods, is the difference between the contract price and the market or current price at the time and

place of delivery, or if no time is fixed for delivery, then at the time of refusal to accept delivery; that placing goods in storage in the name of the vendor does not pass title to the vendee, and that under section 63 of said act title to the goods could be passed to the vendee by an offer to deliver and a refusal to receive, followed by a notice to the effect that the goods are thereafter held by the seller as bailee for the buyer.

While it is true the plaintiff testified that on or about May 28th, the time of the attempted cancellation of the contract by the defendants, he failed in an effort to sell the goods in New York, there is no evidence that he made any attempt to sell the goods in Philadelphia, the place of delivery and the place where they were stored, nor does his evidence establish that he made any such effort and sale at a time when it could be held that the contract was broken by the defendants. On the other hand, one of his own witnesses testified that the market price for goods of this character had dropped about one-half in the month of May. There certainly must have been some market value for goods of this character. It is contended that the letter notice from the plaintiff to the defendants, that the plaintiff would take such action as the law would allow, might inferentially be construed as a notice of an intention to hold the goods as bailee under the provisions of the Sales Act. This is not tenable, for the holding of the goods as a bailee was not the only course open to the plaintiff. Under the law, he could have delivered or tendered delivery, or he could have, in the event of non-acceptance by the defendants, disposed of the goods at a fair market price, or might have retained the goods and sued for the difference between the contract price and the market price; but it does not follow that a threat to invoke the law means that the plaintiff is giving notice of an intention to hold the goods as a bailee under the special provisions of section 63 of the Sales Act.

Both reasons advanced by the defendants in support of the motion for judgment *non obstante veredicto* are controlling under the authorities and the decisions of the Pennsylvania courts.

And now, to wit, April 14, 1925, rule for a new trial discharged. The motion for judgment *non obstante veredicto* is allowed and judgment is directed to be entered in favor of the defendants. An exception to this action of the court is hereby noted for the plaintiff.