## BISBEE LINSEED CO. v. PARAGON PAINT & VARNISH CORPORATION.

### No. 422.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1933.

Gordon & Gordon, of New York City (Jacob Gordon and Mortimer S. Gordon, both of New York City, of counsel), for appellant.

Frank Sowers, of New York City (Edward L. Richards, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The contract which the parties made follows in full:

"Bisbee Linseed Company Contract

"Contract made at Philadelphia, Pa., this 27th day of September 1929 No. 4346, between Bisbee Linseed Company, of Philadelphia, Pa., hereinafter called the Seller, and Paragon Pt. & Varnish Corp. of Borden Ave. & Van Dam St., Long Island City, N. Y. hereinafter called the Buyer.

"The Seller hereby sells and agrees to deliver and the Buyer hereby purchases and agrees to receive in the amounts and on the terms and conditions hereinafter set forth:

"840 Bbls. (about 375 pounds net in each bbl.) of pure Linseed Oil. Price per pound in bbls. 15.3 cents (raw basis).

"Special Oils at Seller's usual differences.

"F.O.B. shipping station—freight allowed to Long Island City, N. Y.

"Shipment—Three cars each month, Apr–July inc. 1930.

| XX | | Jan. | 210 | bbls. | Apr. |
| XX | | Feb. | 210 | " | May |
| XX | | Mar. | 210 | " | June |
| 210 | bbls. | July | XX | " | Oct. |
| XX | " | Aug. | XX | " | Nov. |
| XX | " | Sept. | XX | " | Dec. |

"The buyer to furnish written specifications for shipment to Seller's Philadelphia, Pennsylvania office in ample time to enable Seller to execute order within the period or periods above mentioned, and the Seller shall under no circumstances be in default hereunder in the absence of the giving of such written notice and specifications so as to be received by the Seller at its Philadelphia office by the first of the month for any oil due and to be shipped during said month, and neither the giving of oral specifications by the Buyer nor the receipt or filing thereof. by the Seller or its brokers, nor the giving of written specifications to places other than the Seller's Philadelphia office, nor the giving of written specifications at the Philadelphia office at times other than as required herein; whether given for any installment of this or other contracts between the parties hereto;

shall in any way be construed to waive or modify the Buyer's obligation to give the written specifications for shipment required as above stated. In the absence of such specifications a carrying charge of 25 cents per 375 pounds per month or fractional month shall accrue for such time as seller shall be willing to carry same.

"Failure to deliver any installment of Linseed Oil shall not be a breach of the entire contract.

"All deliveries are subject to delays caused by strikes, lockouts, fires, accidents, perils of the seas, late arrivals or loss or damage to flaxseed purchased by the seller, or from any cause beyond the seller's control.

"Seller's weights are to govern settlement. No allowance for shortage or damage to be made unless Buyer furnishes acknowledgment from railroad that same occurred in transit.

"Terms of payment, net thirty days, or one per cent discount for cash ten days from date of invoice.

"In case of default in payment of any installment of purchase money when due, or in case the credit of the Buyer becomes unsatisfactory to the Seller, the whole sum owing by the Buyer shall become due and payable at once and the Seller shall make all further deliveries, but for cash only.

"This contract shall be construed under the laws of the State of Pennsylvania, and the whole agreement between the parties is stated herein. No stipulations oral or written not incorporated herein shall be of any force or effect."

■■ As there is no bill of exceptions, the sole question before us is whether the complaint is sufficient to support the judgment. United States v. Stephanidis (C. C. A.) 47 F.(2d) 554; Reilly v. Beekman (C. C. A.) 24 F.(2d) 791. This may be presented on assignment of error without a bill of exceptions, for it involves a question of law apparent on the record. Board of Com'rs of City and County of Denver v. Home Savings Bank, 236 U. S. 101, 103, 35 S. Ct. 265, 59 L. Ed. 485; United States v. La Franca, 282 U. S. 568, 570, 571, 51 S. Ct. 278, 75 L. Ed. 551.

The plaintiff requested the defendant to furnish shipping instructions for the oil not actually delivered. When the defendant failed to comply with its request, it demanded such instructions. None were furnished. It was always ready, willing, and able to deliver the oil, and for a time kept it for delivery as the defendant might designate. The price of such oil dropped after the contract was made; and, after the defendant neglected to furnish shipping instructions on the demand of the plaintiff, the plaintiff sold the oil for less than the contract price. The second cause of action is for the recovery of the difference between the contract price and the actual sale price together with interest and carrying charges.

■ There was no express allegation in the complaint of a tender of the oil. There was a general allegation to the effect that the plaintiff had duly performed all the conditions of the contract on its part to be performed, and we are urged to hold that this is enough, since rule 92 of the New York Rules of Civil Practice provides that the performance of a condition precedent in a contract may be pleaded in general terms. But in Ketchum v. Alexander, 168 App. Div. 38, 153 N. Y. S. 864, it was expressly held that this rule, then found in section 533 of the Code of Civil Procedure, did not permit such a general allegation as this to be treated as the equivalent of the allegation of a tender. Neither does an allegation that the plaintiff "was ready, able and willing to ship said oil" amount to that of a tender of delivery. British Aluminum Co., Ltd., v. Trefts, 163 App. Div. 184, 148 N. Y. S. 144. Since, therefore, the complaint failed to allege delivery, a tender of delivery, or facts showing any waiver, it becomes necessary to determine whether, in the absence of such allegations, it will support the judgment.

■ Ordinarily, in a contract for the sale of goods under which the seller agrees to make delivery before the sale price becomes due, there must be a delivery or a tender of delivery to put the buyer in default. British Aluminum Co., Ltd., v. Trefts, supra; Ketchum v. Alexander, supra; American Tin-Plate Co. v. Trotter et al. (C. C.) 105 F. 478; Fulton Bag & Cotton Mills v. Frankel, 196 App. Div. 701, 188 N. Y. S. 709. (See Id., 234 N. Y. 580, 138 N. E. 454); Rogers-Pyatt Shellac Co. v. Starr Piano Co., 212 App. Div. 792, 209 N. Y. S. 727. Fairfax Textile Mills v. Feingold, 273 Pa. 73, 116 A. 525, shows that this is the rule in Pennsylvania. See also, Dwight v. Eckert, 117 Pa. 490, 12 A. 32. Exceptions to this rule are to be found where the contract leaves the seller without the necessary information to enable him to deliver the goods without instructions from the buyer; where there has been a definite repudiation of the contract by the buyer; and where the goods are to be manufactured or shipped in certain sizes or kinds which the contract leaves to the option of the buyer who fails to instruct as

agreed. In each of these instances the seller can neither deliver nor tender delivery, except in the instance of the buyer's repudiation of the contract, and then it would obviously be useless, and so it is held that the buyer's failure to perform his duty to act first to enable the seller either to perform or to tender performance makes it impossible, and so unnecessary, for the seller to do either. See Kent v. Silberstein, 241 N. Y. 440, 150 N. E. 509; Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 541, 100 N. E. 457, 461; Sharpsville Furnace Co. v. Snyder, 223 Pa. 372, 72 A. 786; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967; Hettrick Mfg. Co. v. Waxahachie Cotton Mills (C. C. A.) 1 F. (2d) 913, 920; Milliken-Tomlinson Co. v. Am. Sugar Refining Co. (C. C. A.) 9 F. (2d) 809.

The problem here is to be solved by finding to which class the contract in suit belongs, and that depends upon the provisions embodied in the contract itself.

The plaintiff agreed to sell and deliver 840 barrels of pure linseed oil running about 375 pounds net to each barrel. The price per pound in barrels was stated. Special oils were to be at seller's usual differences. While this did not fix the price of special oils in stated terms of money value, it did show the price definitely by giving the price of pure linseed and the means of computation with that as the base. The shipments were to be three cars each month from April to July, 1930, inclusive, and to be 210 barrels for each of those months. Shipments were to be f. o. b. shipping station with freight allowed to Long Island City, N. Y. The address of the buyer at this city was given in the contract. It was agreed further that the buyer should furnish written shipping specifications to the seller's Philadelphia office in ample time to enable the seller to execute the order within the period covered by the contract and that the seller should not be in default if such specifications were received later than the first of each month "for any oil due and to be shipped during said month"; or be in default if such specifications were given other than as agreed. Also, "In the absence of such specifications a carrying charge of 25 cents per 375 pounds per month or fractional month shall accrue for such time as seller shall be willing to carry same."

It is plain that by failing to give the specifications it agreed to give, the buyer made it possible for the seller to refuse to ship any oil at all without incurring any liability under this contract for its failure to perform. Yet,

if it did not elect, upon the buyer's failure to give the specifications as agreed, to repudiate the contract itself, was it bound to perform or tender performance to put the buyer in default or might it merely demand that specifications be furnished? This depends merely upon whether or not the contract itself was definite enough to enable the plaintiff to deliver or tender delivery of the oil purchased without any specifications from the buyer. In the absence of specifications in accordance with the contract, it clearly could have, within a reasonable time, tendered delivery of the remainder of 840 barrels of pure linseed oil to the defendant at Long Island City, N. Y. Unless the defendant otherwise specified, that was the kind of oil the contract called for; the amount in barrels was known regardless of specifications; and the place where the buyer could be found was known. Indeed, the provision that freight was to be allowed from the shipping point to Long Island City, N. Y., put the contract from a financial standpoint at least on the basis of free delivery to Long Island City. It is true that the buyer, by specifying in accordance with the option the contract gave it, could have required delivery f. o. b. shipping point with the oil consigned to whatever destination it desired; but the designation of delivery points it preferred and of special oils within the quantity limit of the oil purchased was a privilege the buyer had under the contract which it might or might not exercise, and, although it had agreed to furnish specifications, this was not a duty it owed the seller to enable it to perform. When the buyer failed, and in effect refused, to specify in accordance with its privilege, the seller could carry the oil under the carrying clause, tender delivery, or sell elsewhere. It elected to sell after carrying for a time. Had it tendered delivery, it could then have required payment in accordance with the terms of the contract, for the oil would have been placed by it at the disposal of the buyer and the buyer would have been forced to take it or refuse it. As it sold the oil to a third party without putting the defendant in a position where it had to perform or default, the seller is entitled to the carrying charge as agreed, but not to any damages simply because the buyer elected not to furnish specifications not needed to put the seller in a position to deliver the oil. Compare British Aluminum Co., Ltd., v. Trefts, supra. If each party to a contract fails to do what is required to call for action on the part of the other, the contractual obligations of both may lapse without either having a right of action. Of course it is not enough for a plaintiff to

be free from default himself, for he must allege and prove facts, if he would recover, to show the defendant in default. See Williston on Contracts, vol. II, §§ 832, 833. That is exactly the situation here. The seller was excused from delivering the oil by the buyer's failure to give specifications; and the buyer was excused from receiving and paying for oil, neither tendered nor delivered, by the fact that the seller, with all necessary information to do so contained in the contract, never put the buyer in a position where, the oil being made subject to its use and control by a tender of delivery, it had to accept the oil, or justify its failure to do so, or respond in damages for its failure.

As the complaint so far as it relates to the second cause of action was defective in failing to allege either delivery or a tender of delivery, the judgment, which included damages on that score, was erroneous.

Judgment reversed.